IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 07-CR-535-BR |
|        Plaintiff, | |
| | OPINION AND ORDER |
| v. | |
| **JOSEPH OQUENDO SALADINO,** <br> **RICHARD ALLEN FUSELIER,** <br> **MARCEL ROY BENDSHADLER,** <br> **MICHAEL SEAN MUNGOVAN,** and <br> **RICHARD J. ORTT,** | |
|        Defendants. | |


**DWIGHT C. HOLTON**
United States Attorney
**ALLAN M. GARTEN**
**MICHELLE HOLMAN KERIN**
Assistant United States Attorneys
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1000

       Attorneys for Plaintiff


1 - OPINION AND ORDER

**KELLY R. BECKLEY**
P.O. Box 11098
Eugene, OR 97440-3298
(541) 683-0888

       Attorney for Defendant Joseph Oquendo Saladino

**PHILIP A. LEWIS**
111 S.W. Fifth Avenue
Suite 1650
Portland, OR 97204
(503) 226-3498

       Attorney for Defendant Marcel Roy Bendshadler

**LAURA GRASER**
P.O. Box 12441
Portland, OR 97212
(503) 287-7036

       Attorney for Defendant Michael Sean Mungovan

**BROWN, Judge.**

    This matter comes before the Court on the Motions to Arrest Judgment of Defendants Marcel Roy Bendshadler (#414), Joseph Oquendo Saladino (#425), and Michael Sean Mungovan (#423). The Court concludes the record is sufficient for the Court to resolve these Motions without oral argument. For the reasons that follow, the Court **DENIES** Defendants' Motions.

## BACKGROUND

    On December 20, 2007, a grand jury indicted Defendants Joseph Oquendo Saladino, Richard Allen Fuselier, Marcel Roy Bendshadler, Michael Sean Mungovan, and Richard J. Ortt on one

2 - OPINION AND ORDER

count of Conspiracy to Defraud in violation of 18 U.S.C. § 371.

On November 23, 2009, the jury found Bendshadler, Saladino, and Mungovan guilty of the charge.

On July 16, 2010, Bendshadler filed a Motion to Arrest Judgment.  On July 23, 2010, Defendants Saladino and Mungovan joined Bendshadler's Motion to Arrest Judgment.[1]

## DISCUSSION

Defendant Bendshadler moves to arrest judgment on the ground that

> *Skilling[ v. United States*, 130 S. Ct. 2896 (2010),] demonstrates . . . over the years courts have erred in broadening 18 USC § 371; the statute prohibits fraud, and to interpret it to capture the conduct at issue in this case violates the due process right to notice and the rule against vague penal statutes.  Accordingly, when 18 USC § 371 is interpreted correctly, the indictment does not allege a crime and thus, this court should order the judgment arrested and the case dismissed.

As noted, Defendants Saladino and Mungovan join Bendshadler's Motion.  All three Defendants assert the Supreme Court's decision

---

[1] Although the Court has already sentenced Defendants Saladino and Mungovan and entered Judgments of Conviction in both of their cases, these Defendants agreed at their sentencings that the Court should do so subject to the Court's decision on these Motions to Arrest Judgment.  Although the Court denies the Motions as to all three Defendants, and does so for Defendants Saladino and Mungovan after entry of Judgment in their cases, the Court concludes these Defendants have preserved this issue for their appeals.

3 - OPINION AND ORDER

in *Skilling* "reflects a change in how the Court views the expansion of penal statutes to include conduct beyond the statutory text," and courts have erred "over the years" when interpreting § 371 to include the conduct alleged in the Indictment in this case.  According to these Defendants, the conduct alleged in the Indictment in this matter does not constitute fraud against the United States in light of the Supreme Court's reasoning in *Skilling*.

I.   **Summary of *Skilling***

In *Skilling* the defendant was charged with, among other things, conspiracy to commit "honest-services" wire fraud in violation of 18 U.S.C. §§ 371, 1343, and 1346.  The jury found Skilling guilty of 19 of the charges in the indictment, including honest-services wire fraud.  Skilling appealed, and the Fifth Circuit affirmed.  The Supreme Court accepted *certiorari* to consider, among other things, "whether Skilling's conspiracy conviction was premised on an improper theory of honest-services wire fraud"; *i.e.*, specifically, whether the honest-services statute (§ 1346) is unconstitutionally vague or, in the alternative, whether Skilling's conduct fell "within the statute's compass."  130 S. Ct. at 2925-56.  The Court declined to find § 1346 is unconstitutionally vague and instead found it amenable to a limited construction.  Accordingly, the Court focused its analysis on the history of the honest-services mail-

4 - OPINION AND ORDER

fraud doctrine.

The Court noted the judicial development of the honest-services doctrine as early as 1941 and described the doctrine as follows:

> Unlike fraud in which the victim's loss of money or property supplied the defendant's gain, with one the mirror image of the other, *see, e.g., United States v. Starr*, 816 F.2d 94, 101 (C.A.2 1987), the honest-services theory targeted corruption that lacked similar symmetry. While the offender profited, the betrayed party suffered no deprivation of money or property; instead, a third party, who had not been deceived, provided the enrichment. For example, if a city mayor (the offender) accepted a bribe from a third party in exchange for awarding that party a city contract, yet the contract terms were the same as any that could have been negotiated at arm's length, the city (the betrayed party) would suffer no tangible loss. *Cf. McNally*, 483 U.S., at 360, 107 S. Ct. 2875. Even if the scheme occasioned a money or property gain for the betrayed party, courts reasoned, actionable harm lay in the denial of that party's right to the offender's "honest services." *See, e.g., United States v. Dixon*, 536 F.2d 1388, 1400 (C.A.2 1976).

*Id*. at 2926.  The Court noted:

> Over time, "[a]n increasing number of courts" recognized that "a recreant employee" - public or private - "c[ould] be prosecuted under [the mail-fraud statute] if he breache[d] his allegiance to his employer by accepting bribes or kickbacks in the course of his employment," *United States v. McNeive*, 536 F.2d 1245, 1249 (C.A.8 1976); by 1982, all Courts of Appeals had embraced the honest-services theory of fraud.

*Id*. at 2927 (citation omitted).

In 1987, however, the Supreme Court "stopped the development of the intangible-rights doctrine in its tracks" in *McNally v.*

5 - OPINION AND ORDER

*United States*, 383 U.S. 350 (1987).  *Id*.  The Court held in *McNally* that a scheme was not honest-services mail fraud when a state officer who, "in selecting Kentucky's insurance agent, arranged to procure a share of the agent's commissions via kickbacks paid to companies the official partially controlled" and in which "[t]he prosecutor did not charge that, 'in the absence of the alleged scheme[,] the Commonwealth would have paid a lower premium or secured better insurance'" but instead "maintained that the kickback scheme 'defraud[ed] the citizens and government of Kentucky of their right to have the Commonwealth's affairs conducted honestly.'"  *McNally*, 383 U.S. at 353.

In response to the Court's ruling in *McNally*, Congress enacted § 1346 "specifically to cover one of the 'intangible rights' that lower courts had protected . . . prior to *McNally*: 'the intangible right of honest services.'"  *Skilling*, 130 S. Ct. at 2927 (quoting *Cleveland v. United States*, 531 U.S. 12, 19-20 (2000)).  The Court concluded Congress intended to "reinstate the body of pre-*McNally* honest-services law" when it enacted § 1346. *Id*. at 2929 (quotation omitted).  Accordingly, the Court examined pre-*McNally* cases and noted "[i]n the main [they] involved fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived."  *Id*. at 2928.  The Court noted "outside that core

6 - OPINION AND ORDER

category" of honest-services cases, "there was considerable disarray over the statute's application." *Id*. at 2929. Ultimately, the Court concluded:

> In view of this history, there is no doubt that Congress intended § 1346 to reach at least bribes and kickbacks. Reading the statute to proscribe a wider range of offensive conduct, we acknowledge, would raise the due process concerns underlying the vagueness doctrine. To preserve the statute without transgressing constitutional limitations, we now hold that § 1346 criminalizes only the bribe-and-kickback core of the pre-*McNally* case law.

*Id*. at 2931.

## II. Application of *Skilling*

As the government notes in its Response, the Supreme Court in *Skilling* limited its holding to the scope of § 1346. The Court did not suggest its interpretation of § 1346 had broader application to other statutes. Moreover, the Court's analysis consisted of an in-depth historical analysis of honest-services mail fraud and § 1346, which also suggests the Court's interpretation of § 1346 does not have broader implications.

In addition, as noted, the *Skilling* Court brought the interpretation of § 1346 in line with the pre-*McNally* interpretation of honest-services mail fraud. In *McNally* the Court specifically contrasted the broad definition of honest-services fraud in the context of mail fraud with the construction of § 371 and noted:

> *Hammerschmidt*[ *v. United States*, 265 U.S. 182

7 - OPINION AND ORDER

(1924),] concerned the scope of the predecessor of 18 U.S.C. § 371, which makes criminal any conspiracy "to defraud the United States, or any agency thereof in any manner or for any purpose." *Hammerschmidt* indicates, in regard to that statute, that while "[t]o conspire to defraud the United States means primarily to cheat the Government out of property or money, . . . it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest."  265 U.S., at 188, 44 S. Ct., at 512. Other cases have held that § 371 reaches conspiracies other than those directed at property interests.  *See, e.g., Haas v. Henkel*, 216 U.S. 462, 480, 30 S. Ct. 249, 254, 54 L. Ed. 569 (1910) (predecessor of § 371 reaches conspiracy to defraud the Government by bribing a Government official to make an advance disclosure of a cotton crop report); *Glasser v. United States*, 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680(1942)(predecessor of § 371 reaches conspiracy to defraud the United States by bribing a United States attorney). *However, we believe that this broad construction of § 371 is based on a consideration not applicable to the mail fraud statute.*

> In *Curley v. United States*, 130 F. 1 (CA1 1904), cited with approval in *Haas v. Henkel*, supra, the court stated: "Quite likely the word 'defraud,' as ordinarily used in the common law, and as used in English statutes and in the statutes of our states, enacted with the object of protecting property and property rights of communities and individuals, as well as of municipal governments, which exist largely for the purpose of administering local financial affairs, has reference to frauds relating to money and property." 130 F. 1 at 6-7.  The court concluded, however, that "[a] statute which . . . has for its object the protection of the individual property rights of the members of the civic body, is one thing; a statute which has for its object the protection and welfare of the government alone, which exists for the purpose of administering itself in the interests of the

> public, [is] quite another." *Id.*, at 7.
> *Section 371 is a statute aimed at protecting the Federal Government alone; however, the mail fraud statute, as we have indicated, had its origin in the desire to protect individual property rights, and any benefit which the Government derives from the statute must be limited to the Government's interests as property holder.*

*McNally*, 483 U.S. at 359 n.8 (emphasis added). Thus, when restricting the core categories of mail fraud in *McNally*, the Court specifically noted its reasoning did not apply to § 371. Moreover, the Court in *Skilling* did not take issue with that portion of the analysis in *McNally*. Accordingly, it appears unlikely that the Supreme Court would conclude its decision in *Skilling* requires a limitation or reevaluation of the definition of fraud under § 371.

In addition, unlike the defendant in *Skilling*, Defendants here have failed to specify how § 371 as applied in this case represents an overreach by the government or a misinterpretation of the statute by the courts. *Hammerschmidt*, therefore, remains controlling for purposes of this prosecution under § 371. *See United States v. Caldwell*, 989 F.2d 1056, 1058 (1993).

Accordingly, the Court denies Defendants' Motions to Arrest Judgment.

## CONCLUSION

9 - OPINION AND ORDER

For these reasons, the Court **DENIES** the Motions to Arrest Judgment filed by Defendants Bendshadler (#414), Joseph Oquendo Saladino (#425), and Michael Sean Mungovan (#423).

IT IS SO ORDERED.

DATED this 11th day of August, 2010.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

10 - OPINION AND ORDER